IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      v.                                                  17-CR-170

DAVID NICHOLS,

                    Defendant.

## GOVERNMENT RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PRESENTENCE REPORT

**Preliminary Statement:**

On January 13, 2018, the defendant appeared before this court and pleaded guilty to Title 18 United States Code, Section 3220(a)(1) [conspiracy to traffic in counterfeit goods].

Pursuant to paragraph 8 of the written plea agreement, the government maintains the 2 level enhancement under Guidelines § 2B5.3(b)(6)(A) [Offense involved the conscious or reckless risk of death or serious bodily injury] applies to the offense of conviction. The defendant specifically reserved the right to argue to the court that this enhancement does not apply to the offense of conviction [Dkt. 27].

The Presentence Investigation Report at paragraph 72 found Guideline §2B5.3(b)(6)(A) applied to the defendant's offense of conviction (Dkt 38.)

The defendant objected to the United States Probation Department's application of Guidelines §2B5.3(b)(6)(A) and filed objections to the presentence investigation report (Dkt. 47). The following constitutes the government's response to the defendant's objection.

**FACTS:**

As set out in paragraphs 8 through 64 of the Presentence Investigation Report, the defendant and co-defendant Raymond Whelan, entered into an agreement where they imported/smuggled counterfeit automobile air bags into the United States from China. The counterfeit air bags were subsequently sold to third parties using the internet specifically, e-Bay.

Since the defendant resided in China, his role in the conspiracy was to locate, negotiate and order counterfeit air bags from Chinese sources of supply. Co-defendant Whelan's role in the conspiracy was to determine the quantity and type of air bags needed, assemble and sell the counterfeit air bags to unknowing third parties.

Defendant Nichol's contends the enhancement is inapplicable to him because "Mr. Nichols had no contact with air the airbags, believed them to be fully assembled at the time they were imported, was unaware of any mistakes in assembly, and took no part in marketing or sales" (Dkt 47 @ ¶ 12). The following constitutes the government's response to the defendant's objections.

**Law:**

The conscious or reckless risk of death or serious bodily injury enhancement provided at USSG § 2B5.3(b)(6)(A) is identical in wording to the enhancement provided for theft and fraud offenses at USSG § 2B1.1(b)(16). The *Background* commentary to § 2B5.3 notes that "[t]his Guideline treats copyright and trademark violations much like theft and fraud."

> In <u>United States v. Lucien,</u> 347 F.3d 45, 56–57 (2d Cir.2003), the Second Circuit examined the conduct and/or knowledge necessary for the conscious or reckless risk of death or serious bodily injury enhancement to apply. The defendant was convicted of health care fraud based on staging automobile accidents where no one was injured. The defendant argued the enhancement was improperly applied because she was not aware of the dangerousness of her conduct. The Second Circuit rejected the argument and held that in order for the enhancement to apply,
>
> > [A] defendant's fraudulent conduct must have created a risk that others would suffer serious bodily injury; moreover, said risk must have either been known to the defendant (conscious),
>
> > or,
>
> > if unknown to the defendant, the type of risk that is obvious to a reasonable person and for which disregard of said risk represents a gross deviation from what a reasonable person would do (reckless). See also, <u>United States v. Maxo Jean</u>,(unpublished decision) 647 Fed.Appx.1 92d Cir. 2016).

The Second Circuit has used the above mentioned analysis and found the enhancement applicable in <u>United States v. Feldman</u> 647, F3d 450 (2d Cir.2011) [defendant convicted of fraudulently offering liver transplants] and <u>United States v. Thorn</u> 446 F.3d 348 (2d Cir. 2006) [defendant convicted of clean air act violation].

**Argument:**

Using the above, it would be proper for this Court to conclude the defendant's fraudulent conduct can be construed as either conscious or reckless.

The product the defendant smuggled into the United States were automobile air bags. Air bags are installed in automobiles in an effort to avoid or minimize the risk of death or serious bodily injury. According to the National Highway Transportation Agency (NHTSA) website, airbags serve as supplemental protection and are designed to deploy in moderate to server crashes. They are designed to reduce the chance that a person's upper body or head will strike the vehicle's interior during a crash. The NHTSA estimated 2,756 lives were saved in 2016 due to frontal air bags. Due to the protection airbags provide, a vehicle equipped with a counterfeit airbag is a cause for concern. The reason is, counterfeit air bags have been shown to consistently malfunction in ways that range from non-deployment to the expulsion of metal shrapnel during deployment.

Here the government tested several of the smuggled counterfeit air bags seized during the investigation against original manufacturer equipment (OEM) airbags. Consistent with the NHTSA article the counterfeit air bags either failed to fully inflate or over inflated thereby causing shrapnel during deployment.[1]

The defendant should have immediately known he was creating a risk others would suffer serious injury when he received correspondence from his Chinese source of supply

---

[1] The government will provide the Court and defense counsel with a copy of the disk depicting the test under separate cover.

advising him that air bags from China could not be imported into the United States (See PSR ¶42). Rather than stop the shipments, the defendant elected to continue so he could make money. In an email from the defendant to co-defendant Raymond Whelan, the defendant stated, "It isn't the PITA that bothers me, it's that the good might be confiscated and I'd hate to lose money on the deal." (See PSR P48).

The defendant later arranged to have unassembled air bags smuggled into the United States (See PSR ¶ 51 and 53). As the unassembled air bags arrived, the defendant should have realized co-defendant Whelan had little to no knowledge on how to assemble the air bags. During a conversation, co-defendant Whelan informed the defendant that the air bags are "showing up in a thousand pieces… literally" and "I tried to put some together but will need some instruction on the correct process. These are life saving devices after all."

In another communication, co-defendant Whelan informed the defendant that "I was able to get my hands on an OEM bag and it is not assembled the way the Lucy video instructed us to do it….My mechanic friend thinks that assembling them the way we were instructed to do it 'may be fine'…. Bottom line, I assembled one with their instructions and it just may work. I can't see why it wouldn't but… I'm not an airbag expert." (See PSR ¶54 and 55).

Even with all uncertainty surrounding the assembling of the airbags, the defendant new co-defendant Whelan was selling them and he continued to smuggle/import the air bags from China (See PSR ¶ 23-26).

The above-mentioned facts contradict the defendant's assertion that he believed that air bags were fully assembled and unaware of any assembly mistakes.

The fact that the defendant continued importing/smuggling counterfeit air bags into the United States after the Chinese manufactures advised him it was illegal, began having the air bags shipped unassembled and learning his business partner had little to no knowledge on how to assemble the air bags demonstrates a conscious risk that others would suffer serious bodily injury.  The defendant's conduct could also be construed as reckless as it would be obvious to disregard said risk as it would be a gross deviation from what a reasonable person would do.   The defendant's statement, "I knew better and I am glad no one was hurt," further supports the application of the enhancement (See PSR ¶67).

**Conclusion**:

For the above stated reasons the court should applying the substantial risk of death or serious bodily injury enhancement when computing the defendant's base offense level.

DATED:   Buffalo, New York, April 26, 2019.

JAMES P. KENNEDY, JR.
United States Attorney

BY:   */S/MICHAEL DIGIACOMO*
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York   14202
716/843-5885
Michael.digiacomo@usdoj.gov